United States District Court
District of Nebraska

| | |
|---|---|
| **James T. Mitchell,**<br><br>      **Plaintiff**,<br><br>vs.<br><br>**Sergeant Devin Ruff, in his individual capacity; Deputy Roland Kramer, in his individual capacity; John or Jane Doe, in their individual capacity.**<br><br>      **Defendants**. | No. 4:24-cv-3046<br><br><br>Complaint<br>(42 U.S.C. 1983) |

## I.   Introduction

1. On February 24, 2020, James Mitchell drove his vehicle east down a gravel road toward a camping area at a park in Lincoln County, Nebraska. As he traveled east, Lincoln County sheriff's deputies stopped his vehicle and recognized him as a suspected nonviolent drug offender. The deputies immediately drew their firearms, pointed them at Mitchell, and surrounded his car.

2. In response, Mitchell placed his car in reverse and attempted a three-point turn to reverse his direction of travel and leave the park. As he did so Sergeant Ruff and Deputy Kramer fired shots from their rifles into the body Mitchell, causing horrific permanent injuries to his intestinal tract necessitating emergency medical care.

3. Just as he was held accountable for backing his vehicle away from officers, Mitchell asks that the officers be held accountable for threatening to use and using deadly force.

## II. Parties and Jurisdiction

4. At all times relevant herein, James Mitchell was a citizen of the United States of America and a resident of Lincoln County, Nebraska.

5. At all relevant times, Sergeant Devin Ruff was a law-enforcement officer employed by the Lincoln County Sheriff, in uniform, and acting under color of law. Sergeant Ruff is sued in his individual capacity.

6. At all relevant times, Deputy Roland Kramer was a law-enforcement officer employed by the Lincoln County Sheriff, in uniform, and acting under color of law. Deputy Kramer is sued in his individual capacity.

7. John or Jane Doe is one or more law-enforcement officers who were present and employed deadly force. The identity of John or Jane Doe is unknown and will be developed through discovery when the identity of all officers present who used deadly force is determined. John or Jane Doe officers acted under color of law at all times.

8. The alleged events occurred in Lincoln County, Nebraska.

9. Jurisdiction is proper pursuant to 28 USC section 1331.

## III. Use of Objectively Unreasonable Deadly Force

10. During the early evening of February 24, 2020, Lincoln County Sheriff's deputies were gathered near a campsite located in a Lincoln County park.

11. The officers were present at the park attempting to arrest a suspect involved in an unrelated investigation. After vehicular pursuit by the deputies, the suspect fled on foot and escaped apprehension.

12. The deputies included Defendant Sergeant Ruff, Defendant Deputy Kramer, Deputy Chris McColley and Deputy Tiffany Wood.

13. As the deputies were gathered, Mitchell was operating his Chevy Cobalt traveling eastbound toward the camp area.

14. As he traveled east, at least four Lincoln County Sheriff's deputies occupied the road and commanded Mitchell to stop his vehicle. Mitchell complied.

15. Around that time, one or more of the deputies recognized Mitchell as a suspected non-violent drug offender.

16. Based solely on this fact, all deputies present raised their firearms and aimed them at Mitchell as he pulled his vehicle to a stop.

17. No deputy present had reason to suspect Mitchell had a violent criminal history.

18. No deputy present had reason to suspect Michell was carrying a firearm or other weapon.

19. Mitchell had never threatened or resisted officers in the past.

20. Mitchell did not threaten officers when he stopped his vehicle.

21. Deputy Tiffany Wood approached the driver side of the vehicle.

22. Deputy Kramer, Deputy McColley and Sergeant Ruff were on the passenger side of the vehicle.

23. After Deputy Wood made contact with Mitchell, and as the other officers continued to train their rifles on Mitchell, he reversed the vehicle in an apparent effort to make a three-point turn and exit the park by traveling West on the same road he used to enter the park.

24. As Mitchell attempted the maneuver, one or more officers present fired multiple rounds from their rifles, causing Mitchell to suffer physical injury.

25. One round struck Mitchell in the abdomen.

26. One round struck Mitchell in the right chest.

27. One around struck Mitchell in his right bicep.

28. Sergeant Ruff admits he fired two rounds from his rifle.

29. The rounds fired by Sergeant Ruff traveled through the front passenger side window of the Cobalt and into the abdomen, chest and bicep of Mitchell.

30. If Sergeant Ruff only fired two rounds, other officers present also fired their rifles.

31. On information and belief, Deputy Kramer also employed deadly force. He admits feeling gunshot residue burn his hands after hearing two shots he believed were fired by Sergeant Ruff. It is unclear whether Deputy Kramer denies firing his weapon.

32. The rounds fired by Deputy Kramer also caused Mitchell to suffer physical injury.

33. All officers who discharged their weapons are jointly and severally liable for the injuries suffered by Mitchell.

### IV. Injuries

34. The deadly force did not end Mitchell's life. He is alive.

35. The use of deadly force caused serious and grievous injuries to Mitchell, including but not limited to injuries to his left kidney, liver, gallbladder, intestines, diaphragm, ribs, and right bicep.

36. The injuries necessitated emergency medical care with a reasonable value in excess of $900,000.00.

37. Mitchell still suffers and is expected to indefinitely suffer from the injuries to his bowels and intestines, causing him to regularly suffer episodes of reflux into his oral cavity of human waste products that would otherwise be discharged through a person's rectum.

38. By holding Mitchell at gun point and threatening him with the use of deadly force when Mitchell complied with commands to stop his vehicle, each Defendant used excessive force in violation of Mitchell's clearly established rights secured by the Fourth and Fourteenth Amendments of the United States Constitution.

39. By using deadly force, each officer who fired his weapon violated Mitchell's clearly established rights secured by the Fourth and Fourteenth Amendments of the United States Constitution.

40. As a direct and proximate result of the excessive force employed by Sergeant Ruff and others, Mitchell has suffered physical injury, special damages for the medical treatment necessitated by the injuries, pain and suffering, emotional harm, physical impairment, lost wages, loss of dignity, and the deprivation of his Constitutional rights.

41. As a result of Defendants' actions as alleged herein, Mitchell was required to retain the services of attorneys entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988.

## V. Prayer for Relief

42. Based on the foregoing, James Mitchell respectfully requests judgment as follows:

1) Special damages for the cost of his medical care in an amount to be proven at trial but not less than $900,000.00;

2) Compensatory damages for his pain and suffering, emotional harm, physical impairment, lost wages, and loss of dignity;

3) Compensatory damages for the violation of his Constitutional and statutory rights;

4) Attorney's fees pursuant to 42 USC Section 1988;

5) Costs of suit;

6) Pre- and post-judgment interest; and

7) Such other and further relief as they deem just and proper.

## VI. Demand for Jury Trial

43. Plaintiff demands trial by jury of all issues so triable.

JAMES MITCHELL, DEFENDANT

By: /s/ *Adam J. Sipple,* #20557

**S I P P L E L A W**
12020 Shamrock Plaza
Ste. 200
Omaha, NE 68154
402.778.5055
adam@sipple.law